## McCready v. Sexton & Son.

### I. — Per Curiam.

1. **Tax sale :** STATUTE OF LIMITATION. The case of *Eldridge* v. *Kuehl,* 27 Iowa, 160, holding that the five years' limitation provided by the Revenue act (Rev. § 790), does not begin to run until the execution and recording of the tax deed, followed and approved.

2. —— EVIDENCE CERTIFICATE OF SALE. The " certificate of sale " for taxes made by the treasurer and delivered to the purchaser at the tax sale, is competent evidence to show the manner of sale, etc., when offered by either party in a controversy as to the sufficiency of the tax title ; but where there is a difference between such certificate and the record of sale, the former must yield to the latter.

3. —— FRAUD IN SALE. The owner of land sold for taxes may defeat the sale by showing fraud committed by the officer conducting the sale, or by the purchaser. The facts proved in this case, and detailed in the statement, show no fraud.

4. —— POWER OF TREASURER TO MAKE SECOND DEED. A treasurer, who has made a tax deed so imperfect and irregular as not to pass the title, may, on his own motion, where the law has been substantially complied with, make a second or other deed, correct in fact and regular in form, so as to invest the purchaser with the legal title. It was accordingly *held*, where the deed made by the treasurer was void, as showing a sale in gross, that he might execute a second

McCready v. Sexton & Son.

and corrected deed, showing the sale in parcels, in accordance with the facts as shown by the record of sales.

*Argu.* 1. The statute confers upon the purchaser the right to have the title conveyed to him.

2. This right, and the power of the treasurer to execute a deed that will pass the title, is a continuing one.

3. If the treasurer refuses he may be compelled by *mandamus* to convey.

4. A *mandamus* confers no new or additional authority, but simply requires the officer to discharge a, *duty* enjoined by law, when he refuses or neglects to do it.

5. He may do voluntarily what he may be required by *mandamus* to do.

5. —— CONCLUSIVENESS OF DEED : CONSTITUTIONAL LAW. The clause of the Revenue act, which makes the treasurer's deed conclusive evidence of the regularity of all prior proceedings, is held unconstitutional, as depriving a person of his property without due process of law, so far as respects the essential prerequisites for the exercise of the taxing power, such as the assessment, levy, sale and the like; as to non-essentials, or matters merely directory, it is constitutional.

6. —— ACT VOID IN PART. An act void in part, because unconstitutional, is not necessarily void *in toto*. If sufficient remains to carry it into legal effect, without the aid of the invalid portion, the latter only shall be rejected, and the act shall stand.

7. —— It was accordingly *held*, that though the clause before referred to, making the tax deed conclusive evidence, was unconstitutional so far as it related to essential prerequisites, yet that it would be sustained to the extent of the legislative power, and that the word " conclusive," would, as to such essential prerequisites, be considered as stricken out.

8. —— A tax deed, regular on its face, is, under our statute, *prima facie* evidence of the regularity of all prior proceedings.

## II. Per WRIGHT J., dissenting.

9. —— The clause of the Revenue act declaring that the tax deed' shall be conclusive evidence, should not be construed as declaring the deed conclusive evidence of the *fact* or *existence* of the essential prerequisites, or as precluding the party from proving their non-existence, but only as to the regularity of the proceedings in respect thereto, and, hence, such clause is not unconstitutional.

10. —— Where a treasurer has acted, and executed one deed which is imperfect, or irregular, he cannot make a second one on his own motion, but only under the direction or order of court, to be obtained by suit in equity or by mandamus.

*Appeal from Dallas District Court.*

WEDNESDAY, AUGUST 31.

ACTION for the recovery of real property—the southeast quarter of section eight, township seventy-nine, north of range twenty-six, west of the fifth principal meridian. The petition contains the usual averments, and also states that the defendants claim title to the real estate under a deed from the treasurer of Dallas county, dated in 1864 or 1865, purporting to be made under the revenue law, but which is wholly illegal. The defendants answer, averring their absolute ownership of the property, and that they acquired title under a tax sale made in 1860, and a deed therefor made in October, 1866. They also plead and rely upon the statute of limitation of five years, as contained in the revenue law. Rev. § 790. The cause was tried to a jury upon the following evidence, to wit: The defendant introduced the duplicate of the original entry of the land, showing that it was entered by him in March 30, 1855 ; and then rested. The defendant then introduced a tax deed for the land made by the treasurer of Dallas county, October 6, 1866, duly acknowledged and recorded. This deed conformed with the requirements of section 783, and recited the sale in forty acre tracts, October 19, 1860, for the taxes of 1858 and 1859, to the defendants. The defendants then rested.

The plaintiff then introduced the certificate of sale made by the treasurer to the defendants at the time of the sale to them of the property for the taxes; which certificate showed the sale of sixteen different parcels for one hundred and twenty-two dollars and fifty cents, "which was the least quantity bid for ;" and also showed the whole of the land in controversy as one of said tracts. Plaintiff then introduced the record of tax sales made and kept by the treasurer at the time of the sale in 1860;

McCready v. Sexton & Son.

which record showed two sales of the land in controversy, on the same day, in eighty acre tracts; first, for the delinquent taxes of 1858, and then for 1859, the defendants being the purchasers at both sales. Plaintiff then introduced the record of the tax sales for the same year, made and kept by the clerk of the board of supervisors, which showed the same facts. Plaintiffs then introduced F. S. Graham, as a witness, who testified that he was treasurer of Dallas county, from January 4, 1860 to June 4, 1867, and made the sale for taxes of the land in controversy; he presumed the certificate of sale was made at the time of sale, and recited correctly, but did not remember selling this land; he made a deed on the certificate prior to the one offered in evidence; he made it on defendants' request, had it recorded and sent it to them; that he made no record and posted no notice of adjournment of sale from first Monday of October to date of sale; that the deed in evidence is in the handwriting of defendant, Pliny S. Sexton. On cross-examination the same witness testified, on his attention being called to the record of the tax sale, that the record was made by himself at the time of the sale, and was made from the sale itself, and he thinks the record correctly recites the manner of sale, which was all the evidence introduced in the case.

The court then instructed the jury, who retired, and afterward returned the following verdict, to wit: "We the jury, find for the plaintiff;" and also the following special verdict:

"1. We find that more than five years have elapsed between the date of sale and the commencement of this suit.

"2. We find that there was fraud in the sale of the land.

"3. We find that there was fraud by defendants in obtaining the deed;" which verdicts were signed by the foreman.

A motion to set aside the verdict and for a new trial was made by defendants and overruled by the court. The defendants appeal. The facts connected with the exceptions taken during the trial, and also to the instructions, are stated in the opinion. The cause has been twice argued; first on the original submission, and afterward, pursuant to an order made by the court for re-argument.

*J. R. Reed* and *Barcroft & Gatch*, for the appellants, filed a lengthy argument, from which the following points are extracted and condensed:

I. The power of the treasurer to execute tax deeds is a continuing one, and if, in a given case, by a mistake in the recitals, or otherwise, his deed wholly fails to convey title the power still remains in him to execute such a deed as should have been executed in the first instance. Blackwell Tax Titles, 440, 441; *Maxcy* v. *Clabaugh*, 1 Gilm. 26; *Bank of Utica* v. *Mersereau*, 3 Barb. Chy. 578; *State* v. *Wynn*, 19 Wis. 304; *Woodman* v. *Clapp*, 21 id. 353, 354.

II. The taxing power like the right of eminent domain, inheres in every government, as a power essential to its existence and perpetuation, and from its nature and purpose necessitates very great latitude of discretion and freedom from constitutional restraints as to the extent and manner of its exercise. Blackwell Tax Titles, 8; Cooley Const. Lim. 479; Sedg. Stat. and Const. Law, 554; *Providence Bank* v. *Billings*, 4 Pet. 562; *Kirby* v. *Shaw*, 7 Har. 258; *Debolt* v. *Ohio Life Ins. Co.*, 1 Ohio St. 587–589; *Mechanics' and Traders' Bank* v. *Debolt*, id. 600; *Plank Road Co.* v. *Husted*, 3 id. 583, 584; *Brewster* v. *Hough*, 10 N. H. 143; *Herrick* v. *Randolph*, 13 Vt. 529.

III. The legislature, in the exercise of the taxing

McCready v. Sexton & Son.

power, is subject only to such limitations as are expressly or impliedly imposed by the constitution. Cooley Const. Lim. 72, 73, 168–172 ; Sedg. Stat. and Const. Law, 180, 182, 677 ; *Kirby* v. *Shaw*, 7 Har.. 258 ; *Cochran* v. *Surley*, 20 Wend. 381 ; *Bennett* v. *Boggs*, 1 Bald. 74, 75 ; *Sharpless* v. *The Mayor, etc.*, 21 Penn. 162 ; *The State* v. *Almond*, 4 Am. Law. Reg. 536, 542–544 ; *The People* v. *The Mayor, etc.*, 4 Coms. 428 ; *Wynhamer* v. *The People*, 3 Kern. 411, 430, 452, 476.

IV. Section 25 of the bill of rights is in no way restrictive of the taxing power. If it were it would be equally so of every other non-enumerated power, and the necessary conclusion would be that our state government, like the federal, is one of enumerated powers. If, by the section referred to, any rights are reserved, or any powers limited, what are they ? Who is to define them ? How are they to be defined, except by the line that separates enumerated from non-enumerated powers ?

V. Neither the provision that private property shall not be taken for public use without just compensation, nor the clause declaring that no person shall be deprived of his property without due process of law, limits the legislative power as regards taxation. Sedg. Stat. and Const. Law, 501 ; Blackwell Tax Titles, 30, 40 ; Sedg. Stat. and Const. Law, 570–572 ; *People* v. *Mayor, etc.*, 4 Coms. 423 : *People* v. *Smith*, 21 N. Y. 595 ; *West River Bridge Co.* v. *Dix*, 6 How. 507 ; *Wynhamer* v. *The People*, 13 N. Y. 378 ; *Nichols* v. *Bridgeport*, 23 Conn. 189 ; *Allen* v. *Armstrong*, 16 Iowa, 508 ; *Harris* v. *Wood*, 6 Monr. 643 ; *McCarroll* v. *Weeks*, 6 Overton, 215 ; *McCollough* v. *Maryland*, 1 Wheat. 428.

VI. In the light of the foregoing, we feel warranted in assuming : *First.* That at most, the following conditions only are essential to " the due and valid exercises of the

power to tax, which inherently resides in every government."

1. That the sum to be raised be a *tax* according to the legal import of the term.

2. That it be levied by competent authority on property subject to taxation.

3. That the amount due from each tax payer, and the time and place of payment, be so ascertained as to enable him to know the amount, and have opportunity of payment before being deemed in default.

The attainment of these results being provided for— viewed simply as a question of legislative power under the constitution—it matters not by what means they are to be attained.

*Second.* That as against a tax payer, properly deemed in default, the necessities of the government warrant whatever proceedings and penalties are reasonably calculated to secure its needed revenue, whether they operate directly to enforce payment, or indirectly, by way of inducement to purchasers at tax sales.

VII. Whatever provisions of the revenue act the legislature might have dispensed with, it was competent to enact as directory only, and provide that a neglect or failure to observe any or all of them should not invalidate the proceedings; which from a fair and reasonable construction of the act, will appear to have been done. Rev. §§ 753, 762, 770, 774, 784–786, 805.

VIII. Whatever the legislature may dispense with as *non-essential*, it may *direct* to be done, and make the treasurer's deed *conclusive evidence* that it has been done. *Allen* v. *Armstrong*, 16 Iowa, 512–515; *Atkins* v. *Hinman*, 2 Gil. 452; *Hinman* v. *Pope*, 1 id. 141; *Stewart* v. *Corbin*, 25 Iowa, 146, 147; *Smith* v. *Cleveland*, 17 Wis. 565, 566; *Gwyne* v. *Neiswanger*, 18 Ohio, 406, 407; *The*

*People* v. *Mitchell*, 35 N. Y. 557 ; *Wood* v. *Chapin*, 13 id. 515.

IX. The assessment, levy and sale are of so formal a character that of this the deed may be made conclusive. *Knox* v. *Cleveland*, 23 Wis. 245 ; *Wakely* v. *Nichols*, 16 id. 588 ; *Burrows* v. *Bashford*, 22 id. 103.

In *Burrows* v. *Bashford*, 22 Wis. 103–104, the court say : " Prior to 1859, the law in force made tax deeds *conclusive* evidence of the regularity of the proceedings, and they were only liable to impeachment by showing that the land was not liable to taxation, or that the taxes had been paid. But by chapter 22, laws of 1859, a new policy was adopted with respect to tax deeds, making them only *prima facie* evidence.

In *Knox* v. *Cleveland*, 23 Wis. 245, *held :* " The general authority of the taxing officer, and the liability of the land for taxation, being conceded, all other questions are at an end. If either of them was wanting, another question would be presented. It might then be urged that there was a defect of jurisdiction," etc.

Aside from these all other matters must be considered as irregularities merely, of which the opportunity for investigation has been lost.

Also, in *Wakely* v. *Nicholas*, 16 Wis. 588, it is held, that " the revenue acts cuts off all defences to a tax deed, resting on technical grounds or irregularities in the proceedings, not affecting the groundwork or substantial justice of the tax, and this provision is *constitutional.*"

The above cases hold that nothing is " substantial or groundwork " but the fact that the land was not subject to taxation, or he had paid his tax, or that the officer had no jurisdiction ; all other matters of assessment, levy, etc., are formal, and cannot be inquired into after the deed is given.

In *Hinman* v. *Pope*, 1 Gilmn. 141, it is said : " The

government must have revenue, and it must be collected from all ; it must be forced from the unwilling and negligent by disposing of their property to those who are willing to advance the money," etc.

In *Atkins* v. *Hinman*, 2 Gilmn. 452–453, the court say :

"The objections proceed from a one-sided view of the subject. The allegation that land is sold for a trifle is alone regarded, while the obligations of the tax payer and the rights of the government are not considered."

In Ohio, the act of January 29, 1827, declares "that a tax deed shall convey to the purchaser a good and valid title to the land sold, and shall be received in all courts of the state as good evidence of title, etc. Nor shall the title conveyed be invalidated or affected by any error previously made in listing, taxing, selling or conveying said land."

And in *Gwynne* v. *Neiswanger*, it was held by the supreme court of that state, that, under the statute, "the deed raised a *conclusive presumption* that all of the proceedings, anterior to its execution and delivery, were in strict conformity with the requirements of the statute."

Of course, a *sale* of land by the treasurer is one of the fundamental proceedings, if any are fundamental other than those mentioned in *Knox* v. *Cleveland supra* ; and if the legislature has power to say that a deed shall be conclusive evidence of the legality of the *sale*, it has the same power so to declare as to any other step, and this has been frequently held.

The Michigan statute of April 13, 1827, declares "that the tax deed shall vest in the purchaser an absolute estate in fee simple, etc., and be conclusive evidence that the sale was regular, according to the provisions of this act;" and in the case of *Scott* v. *Detroit Young Men's Society*, 1 Doug. (Mich.) 121 ; 2 id. 204, it was held that the deed

was conclusive evidence " that the *sale* was made at the time and in the manner prescribed by law."

So in New York. The statute declared that the " comptroller's deed on tax sale shall be *conclusive* evidence of the regularity of the *sale*, and the courts of that state hold, in accordance with the act, that the deed is conclusive evidence of the legality of the sale." *Doughty* v. *Hope*, 3 Denio, 596–602 ; *Tallman* v. *White*, 2 Coms. 69.

The court will perceive that in both states the court rightly construes the language of the acts making " the deed conclusive evidence of the regularity of the sale," to apply to the *sale*, and not to the prior proceedings. And by so holding, it is plain they would have also held that the deed was conclusive evidence of the prior proceedings had the statute so declared, for it has as much power to do the latter as the former.

In *The People, etc.,* v. *Mitchell, etc.,* 35 N. Y. 551, the court says : " Our clear conclusion is, that it was the intention of the confirmation acts to make the affidavits of consent, then on file in the clerk's office, of the respective towns and counties, however *defective in form and substance,* ' valid and conclusive proof in all courts and for all purposes, to authorize and uphold the respective subscriptions to the stock, and the issue of the bonds to the amount specified in such proof, for such towns respectively.'

" This purpose is apparent from the further provision, that no defects ' in any such affidavits shall invalidate such proof ;' and that ' the bonds shall be valid and binding on said town without reference to the form or sufficiency of such affidavits.' Laws of 1864, p. 911.

" The commissioners were not left at liberty either to go behind the affidavits or to allege their insufficiency. The statute relieves them from all responsibility, by providing that such proof by affidavit shall be *valid and conclusive*

to authorize such subscriptions, and to issue the bonds. Laws of 1863, p. 18."

" The legislature is competent to declare what part of the proceedings required by law in the collection of taxes upon land shall or shall not be essential to the validity of the tax sale or deed, and therefore competent to declare that, after the execution and recording of the deed, it shall not be invalidated by any defects or irregularities in such proceedings, in case the land was subject to the taxes levied on it and they were not paid. * * *

" When the tax deed was not by law to be given until three years after the tax sale, provisions declaring that it should not be invalidated by any irregularities in the proceedings, may be sustained at a statute of limitation." *Smith* v. *Cleveland*, 17 Wis., 556 ; also, opinion of Judge MILLER, appended to same ; *Lord* v. *Milwaukee, etc.*, 17 Wis. 569.

" Courts cannot go behind assessments and taxes which have been confirmed by the legislature, and inquire into their alleged errors and irregularities." *People* v. *Todd*, 23 Cal. 181.

In *Mutual Insurance Co.* v. *The Supervisors of Erie*, 1 Coms. 442, 449 ; also *Colonial Fire Insurance Co.* v. *Supervisors of New York*, 24 Barb. 169—under a statute which provides that if an affidavit of the insurance company was not furnished that it had no income, such refusal should be *conclusive evidence* of its *liability* to taxation, and it was *duly assessed.*

The court in both cases say : " That the assessment of every such corporation is made *conclusive evidence of its liability* to taxation, and *that it was duly assessed,* unless the affidavit prescribed by the 9th section of the act is made as therein directed."

In *Wood* v. *Chapin*, 13 N. Y. 515, being a case under the non-resident debtor act, which provided that trustees

should be appointed of the property of the debtor, and that on taking the oath they should be deemed vested with all the estate, real and personal, of the debtor; and that their appointment shall be conclusive evidence that the debtor therein named was a concealed, absconding or non-resident debtor, and that said appointment, and all prior proceedings, were regular. The court say : " We are bound to hold that the appointment of trustees furnishes *conclusive*, that is, incontrovertible, evidence that all the proceedings were in accordance with the statute, and that all the property of the debtor was by operation of law vested in the trustees."

X. The same principle which sustains the statute of limitations, which declares what shall be constructive notice, and what constructive fraud, viz : public policy, sustains this statute under consideration. All are based on the fact that the party against whom they operate has not done his duty ; has not obeyed these general rules of society necessary for the public good ; has been negligent, and it is better that he should suffer than to have litigation and uncertainty in titles.

If A. is occupying B,'s land, though he has no shadow of right to it, yet if B. does not assert his right to it within ten years, such neglect or refusal will be held conclusive evidence that he had no right to it, though it is false in fact.

Or if A. buys a piece of land and neglects to examine the records, which disclose a prior deed or mortgage, he must lose by his neglect.

If a notice of a suit is by publication, after a certain time the judgment is final, though the defendant never had notice in fact. The publication is conclusive.

So in case of fraud, certain things are declared to be conclusive evidence of fraud, however innocent in fact a party may be, simply because he neglected to comply

with some requirement of law made for the public good. *Stevens* v. *Fisher*, 19 Wend. 181.

How courts can make a distinction and shield a party from the consequences of his neglect in a tax title case, and not in others, when the statute makes none, we cannot understand.

By the statute and decisions in New York, a chattel mortgage is *prima facie* evidence of fraud if the mortgagee fails to take possession of the goods, and such evidence becomes conclusive if he neglects to record it. Why cannot equally conclusive evidence be made against a party more guilty ?

In *Myers* v. *Dodd*, 9 Ind. 290, the court say: "It is competent for the legislature to declare that *no action shall be maintained* for trespass committed by cattle in favor of the owner of land not securely fenced."

In *Hopkins* v. *Ladd*, 35 Ill. 178, the court say: "The right of trial by jury is not impaired by a law giving to the court the right to assess the damages without a jury in case of default."

Both of these cases go upon the ground that the legislature has the power to deprive a man of certain rights when he has not done what he should have done ; in the one case take from him a right of action for damages for his neglect to repair his fences, and in the other, take from him a trial by jury for his default in not appearing.

In *Perham* v. *Decatur County*, 9 Ga. 352, it is held: " The sovereign right to levy and collect taxes grows out of the necessity of the government—an urgent necessity—which admits no property in the citizen while it remains unsatisfied. All property is a pledge to pay the necessary debts and expenses of the government."

*In Tyler* v. *People*, 8 Mich. 320, the court say: "To authorize a court to declare a statute unconstitutional, it

should be able to point out the part of the constitution violated, and the infraction should be clear."

In *McMillen* v. *Lee County*, 6 Iowa, 391, 394 : "In ascertaining the power of the legislature under the constitution, we look, not to what the instrument authorizes to be done, but to what is prohibited."

No case has been found where a court has declared a statute law to be void because it conflicted with some undefined right not secured by a written constitution, however valuable that right may have been considered. *People* v. *Gallagher*, 4 Mich. 244.

In the *People·* v. *Simeon Draper*, 15 N. Y. 532–545, the court says : "If a particular act of legislation does not conflict with any of the limitations or restraints in the constitution, it is not in the power of the courts to arrest its execution. * * If the act can be upheld upon *any views of necessity or publc expediency* which the legislature may have entertained, the law cannot be challenged in the courts."

In *Ross* v. *Whitman*, 6 Cal. 351 : "All the duties or powers of any of the departments not disposed of or distributed to particular officers of that department are left to the disposal of the legislature."

In *Commonwealth* v. *Drewey*, 15 Gratt. (1 Va.) : "All subjects of legislation not effected by mandate nor by prohibition are within the discretion of the general assembly."

XI. The result is, the belief that the legislature has power to make the tax deed conclusive evidence as against a delinquent.

1. As a matter of public policy.

2. Because experience proves it to be a *necessary means* to enforce the collection of taxes, without which the power to collect taxes is ineffectual.

3. Because it is in the nature of a penalty against the negligent, which the legislature had the right to impose.

4. Because it was a necessary inducement to offer to the purchaser before the state could sell the delinquent lands.

5. Because he had notice of the law, and, by not interposing any objection within the time, is conclusively presumed to have assented to it.

6. Because it is nothing more in effect than a statute of limitations, as held in *Smith* v. *Cleaveland*, 17 Wis. 556, etc.

XII. If, however, the court should hold that the legislature has no right, *as a matter of public policy*, to make the deed conclusive evidence, as we contend, then we say the deed is *prima facie* evidence of all these facts.

In construing a statute, the court looks beyond the form of words, to the pith and substance of the enactment. Taking it in its entire scope, section 784 makes the deed evidence of nine facts, and further provides as to six of those facts that such evidence shall be conclusive. If it has power to make it evidence of the nine facts, it has unmistakably evinced that intent; and this is in no wise impaired by the failure of the further intent expressed, to make such evidence conclusive as to six of the nine facts. If the court thinks the act unconstitutional, it is only in this respect to the word *conclusive*.

All must stand except what the construction cuts down. It may annul that word, and it then becomes mere surplusage, leaving it to read that the deed is simply evidence of the facts specified, but subject, like all other evidence not made conclusive by law, to be rebutted by counter evidence.

Evidence is always open to contradiction, unless made conclusive by positive statute, or by force of some rule of artificial presumption.

"Thus far and no further," is the injunction of the law upon the judge in annulling unconstitutional clauses.

Thus, in *Santo* v. *The State of Iowa*, 2 Iowa, 165, the court say : " A statute void in part is not necessarily void in whole. If sufficient remains to effect its object, without the aid of the invalid portion, the latter only should be rejected, and the former allowed to stand."

In *Clark* v. *Hitching*, 5 Gray (Mass.) 486 : " The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separate, so that the first may stand though the last fall. The point is not whether they are contained in the same section, for the distribution into sections is purely artificial, but whether they are *essentially and inseparably connected in substance.*

In *McClay* v. *Love*, 25 Cal. 367, the question arose under the married woman's act, prohibiting any incumbrance on the *wife's* property, unless by a writing signed by the *husband* and wife. " Held, that the requirement that the husband should join was unconstitutional, and that these words should, therefore, be deemed omitted, and the remaining words should have full force and effect."

At page 382, it says : " Requiring the signature of the husband is only additional safeguard, and is not so vitally connected with the object of the act that it cannot be stricken out without violating the whole section." *Brown* v. *Beatty*, 34 Miss. 242 ; *Mobile R. R. Co.* v. *State*, 29 Ala. 584 ; *Zims* v. *State*, 26 id. 769 ; *Phillips* v. *New York*, 1 Hilt. (N. Y. C. P.) 473.

In *The People* v. *Hill*, 7 Cal. 97, the court says : "Unconstitutional provisions in an act, if not necessary for its maintenance as a whole, will not vitiate the whole."

" When a greater tax is voted or assessed on a party, than is authorized by law, the whole tax is not void, but only the excess." *State* v. *McClurg*, 3 Dutch. (N. J.) 253.

In *Nelson* v. *People*, 33 Ill. 398, the court say : "If portions of an act are unconstitutional, and others not, such parts as are free from the objections may be executed and enforced, while the obnoxious portions will be disregarded." *State* v. *Copeland*, 3 R. I. 33 ; *State* v. *Snow*, 3 id. 64.

"One portion of an act may be declared unconstitutional, and the residue of the same act valid. The act is void only so far as it conflicts with the constitution."

"If a man have power to lease land for 21 years, but makes the lease for 40 years, it will be good for 21 years." Sugden on Powers, ch. 3, § 9.

So in New York, after the anti-rent trouble growing out of the Van Rensselaer lease, the legislature passed a law that no lease should be valid if made for a longer term than 12 years. A lease made for 20 years was held good for 12 years.

Also, the statute declaring all parol leases void, if made for a longer period than one year. A parol lease for three years was held for one year.

XIII. There is another view, also, which will render the deed *prima facie* evidence.

Section 503, of the code of 1851, made the tax deed presumptive evidence.

Section 56, of the act of March 23, 1858, also made the deed presumptive evidence, and section 34 of said act only repeals such acts as were in conflict with it. As the first was not in conflict with the last it was not repealed.

And the revenue act of 1860, section 808, only repealed such acts as conflicted with it. Now, the act of 1858, section 56, does not conflict with section 784 of the act of April 2, 1860, in respect to the evidence of the deed ; only one is greater in degree than the other — both are consistent, hence not repealed.

But if it is held that section 784 of Revision, making the deed conclusive, is inconsistent with section 56 of act of 1858, then we say, if section 784 is unconstitutional, so far as it makes the deed conclusive evidence, that section 56 of the act of 1858 is not repealed, and, hence, that the tax deed is *prima facie* evidence.

In *Shepardson* v. *Milwaukee R. R. Co.* 6 Wis. 605: "*Held*, an express repeal of all acts inconsistent with the provisions of a statute has no effect on acts inconsistent only with a void or unconstitutional clause in the repealing act."

In *Sullivan* v. *Adams*, 3 Gray (Mass.) 476 : "*Held*, that the subsequent act has no repealing force as to such prior law, in conflict only with the unconstitutional part of the latter act." Also see *Childs* v. *Showers*, 18 Iowa, 262 ; *Clarke* v. *Hitching*, 5 Gray (Mass.) 486 ; *People* v. *Tiphane*, 3 Parker's C. R. (N. Y.) 241.

*S. Sibley* for the appellee.
(Brief not found on reporter's file.)

COLE, Ch. J.—I. When the plaintiff offered in evidence the duplicate of the original entry of the land

1. TAX SALE: statute of limitation. in controversy, showing the entry thereof by himself, the defendants objected to the evidence, because it appeared by the plaintiff's petition that the land had been sold for taxes more than five years prior to the bringing of this suit, and there was no showing that plaintiff was a minor or insane. The objection was overruled, and thereon the first error is assigned.

There was no error in overruling the objection. For the plaintiff had the right to first show his title, and then show the fact of his minority or insanity ; and such would be the regular order of testimony. But, further than this, the period of five years' limitation provided by the

revenue act (Rev. § 790) does not begin to run till a completed sale ; that is, till the execution and recording of the tax deed, as was held by this court in *Eldridge* v. *Kuehl*, 27 Iowa, 160. The petition in this case was filed in October, 1866, and states the tax deed to have been made in 1864 or 1865—less than five years.

II. Upon the offer by the plaintiff of the certificate of sale, the defendants objected to its being received in evidence, on the grounds that it was not the best evidence of the sale ; that the tax deed was conclusive evidence of the regularity of the sale, and that the sale was therein recited, and that it was irrelevant and immaterial. The objections were overruled and the certificate admitted. The ruling is now assigned as error.

*2. —— evidence: certificate of sale.*

That the record of the tax sale made by the treasurer at the time of sale, in a book provided for that purpose and pursuant to his legal duty, it is of a more satisfactory and convincing character than any certificate of the fact made subsequent thereto, and in case of conflict the former should override the latter, cannot be seriously doubted or questioned ; and this for many reasons, and among them the one that the statute requires the certificate to be made from and " as the same was described in the record of sales." Of course, if the certificate is made from the record of sales, and should afterward be found not to conform thereto, the result must be that the certificate yield to the record. And yet, since the statute requires the treasurer to give the certificate to the purchaser, and makes the same assignable and a muniment of the right and title of the holder, it was competent evidence and the court did not err, so far as this objection is concerned, in receiving it. Rev. §§ 777, 778. The objection that the tax deed is conclusive evidence of the regularity of the sale and all prior proceed-

ings will be hereinafter considered. See as to the point here ruled, *Blight* v. *Banks*, 6 Monroe (Ky.) 206 ; *Blight* v. *Atwell*, 7 id. 268.

III. The defendants also objected to the introduction of the record of tax sales, including the land in controversy, and this, on the ground that the tax deed is conclusive as to those matters. This question of conclusiveness of the deed is discussed at length and determined under the sixth point of this opinion, and it is only necessary to say here that there was no error in admitting in evidence the record of sales. And the evidence of the witness Graham was objected to on the same ground, but was properly admitted as we shall hereafter see.

IV. The defendants moved the court to set aside the verdict of the jury and to grant them a new trial, *inter alia*, because the court had erroneously instructed the jury, and their verdict was contrary to the evidence. This motion was overruled and excepted to. The court instructed the jury : "If you find that the tax sale was void when made, or that the deed made thereon to the defendant was obtained by fraud, then you will find for the plaintiff, even if the sale was made more than five years before the suit was brought."

3. —— fraud in sale.

"Fraudulent conduct on the part of defendants, or either of them, if you find there was any in the purchase of said land at tax sale, or in the procurement of the tax deed, would vitiate said deed and render it void." The jury found specially that there was fraud in the sale of the land and in obtaining the deed, and must have grounded their general verdict for plaintiff on these special findings.

That the owner of land may defeat a sale thereof for taxes by showing fraud committed by the officer selling

the same, or by the purchaser, is well recognized upon general principles, and is also expressly provided by our statute, Revision, section 784, last proviso.

But in this case the entire evidence is contained in the transcript and is set out in the statement preceding this opinion, and we hold that there is substantially no evidence tending to show either fraud by the officer or in the purchaser; and certainly there is not sufficient evidence to authorize the instructions or to support the verdict. The court therefore erred in overruling the motion to set aside the verdict and grant a new trial. Since the evidence is very brief, and is all set out in the statement, it becomes unnecessary for us to further discuss or review it.

For this error, the judgment must be reversed, unless the second deed made by the treasurer, and upon which these defendants rely for their title, is void or ineffectual to pass the title to them, by reason of the want of power or authority in the treasurer to make such second deed. If he has no such power, then the defendants have no legal title, and are not prejudiced by the error, and the judgment should be affirmed notwithstanding the error. For, to justify a reversal, there must be error shown which has prejudiced the party appealing. It becomes necessary, therefore, to decide whether the treasurer can make a second deed so as to pass the title. We therefore turn ourselves to the questions of the conclusiveness of a tax deed, and to the power of the treasurer to make a second deed.

It was upon these two questions, mainly, that the reargument of this case and the other cases of *Hurley* v. *Street*, and *Parker* v. *Sexton & Son*, was ordered. They have been very fully and ably re-argued, and it is but just that we should acknowledge our obligation to counsel for the aid afforded us thereby.

V. The question then arises, can the treasurer make a

**4. —— power of treasurer to make second deed.** second deed, correct in fact and regular in form, having made an imperfect or informal one which did not pass the title?

This question is not entirely new; it has before been directly adjudicated. It was held in *Maxcy* v. *Clabaugh*, 1 Gilman (Ill.) 26, that the power and duty both existed. Under the statute of that state, then in force, the clerk of the county commissioner's court was the officer authorized to make the sale and tax deed. The tax deed was made on the 3d day of March, 1834, for the taxes of 1833, and the first deed was made by the clerk who made the tax sale, and was dated March 8, 1838; this deed was ambiguous, in that it failed to show whether the sale was for the taxes of 1833 or 1834. On the 10th of November, 1841, the successor of the clerk who made the sale and first deed made another deed to the purchaser, reciting the making of the first deed and the mistake therein, and also that it appeared from the records and papers in his office that the sale was made for the taxes of 1833. This second deed was correct and regular, but was excluded as evidence by the court below. On appeal to the supreme court, " L. Trumbull, for the defendant in error, contended that the clerk of the county commissioner's court had no authority to correct the mistake. Application should have been made to a court of equity, by making all persons parties who are interested." But the court held : " It is manifestly the duty of the clerk in such a case to execute and deliver a good and perfect deed to the purchaser for the lands purchased. If he fails or neglects to perform the duty he can be compelled to. do so by a writ of *mandamus*. The successor in this case, being in possession of the same files, and thus having the same means to make the correction which his predecessor had, may likewise be compelled by writ of *mandamus* to make a similar correction. It seems to us, that what a

court will compel an officer to do by virtue of a writ of *mandamus*, he may be permitted to do voluntarily. This cannot operate injuriously to the party against whom such deed is offered. * * * The deed was admissible in evidence, and the court erred in rejecting it." This case not only decides very directly and squarely the question above stated, but it also decides that the successor of the officer may make the second deed and correction, and may do so seven years and eight months after the sale.

In *White* v. *Winne*, 19 Wis. 304, the court say : " Where the tax deed first issued to the legal owner of a tax certificate is fatally defective in form, he may demand of the officer *a new tax deed* in proper form, and if he refuses to execute it he may be compelled to do it by *mandamus*." And again, the same court in the case of *Woodman* v. *H. S. Clapp*, 21 Wis. 350, uses the following language, per DIXON, Ch. J.: "In deciding these questions, we adhere, of course, to the principles heretofore established by the judgment of this court, namely, *that it is competent for the clerk of the board of supervisors, in cases like this, to execute and deliver new deeds*, where those already executed are defective or void, and that the effect of every tax deed properly executed is to be determined by the law in force at the time of the sale." The same doctrine is affirmed by the same court, per COLE, J., in the case of *Woodman* v. *W. L. Clapp et al.*, 21 Wis. 355.

In *Finley* v. *Brown*, 22 Iowa, 538, the treasurer had made the second deed, and it, as well as the first deed, was admitted in evidence, and this ruling was assigned as error; *held*, that there was no error. The opinion does not discuss the point, but it must, in order to reach the conclusion, have decided directly in the affirmative the question above stated.

In *Harper* v. *Sexton*, 22 Iowa, 442, where the defendant, a purchaser at a tax sale, having received one tax deed for the property in controversy which was invalid, asked, by way of cross-action in his answer, that the treasurer be compelled to make a second and valid deed, this court said : " It is doubtless true, that the relief asked by de-fendants in this case, as against the treasurer, might, in a proper and clear case, be obtained by a proceeding in *mandamus*, or possibly by suit in equity." But the relief asked by defendant was denied in that case, on the sole ground of inadequate consideration, a large proportion of the taxes for which the property was sold being illegal or unauthorized.

The judgment in the case of *Ackley* v. *Sexton*, 24 Iowa, 320, was reversed because the court below had permitted, against objection, the introduction in evidence of *a copy* of a tax deed without any accounting for the absence of the *original ;* and an opinion upon the question above stated, as well as upon several others, made in the case, was expressly withheld.

The power and right to amend tax proceedings were fully discussed and sustained in *Gibson* v. *Bailey*, 9 N. H. 168, and it was there held to be settled, that such amendments might be made " to conform to the truth of the fact. See also *Atkins* v. *Hinman*, 2 Gilman, 437 (451). And Mr. Blackwell, whose personal inclination appears to have been against the adjudications, says : " There does not seem to be much objection to this doctrine, by which the rights of third persons are saved and the power is confined to cases where the law has, in fact, been complied with by the officers, but a record of their proceedings has been imperfectly made up, and where sufficient evidence of the compliance appears upon the face of the record, either in express terms or by legitimate

inference, from the facts actually stated." Blackwell on Tax Titles (2d ed.) 361, ch. 21.

The same author says (ch. 22, p. 372, 2d ed.): " The power to convey, when it once attaches, is a continuing one, and the exercise of it is not barred by lapse of time, except so far as the general statutes of limitation, which bar the right of entry upon the land and the recovery of the possession of it by action, may affect the rule. The certificate of sale vests in the purchaser and equitable interest in the land, *and he has a right to be clothed with the legal title* at any time after the period of redemption has elapsed and before his right is barred by the statute of limitation ; and even afterward where the premises are not in the adverse possession of another."

That the treasurer, under our statute, is clothed with this *continuing power to convey*, and that the purchaser *has a right to be vested with the legal title*, is clear beyond question. Rev. §§ 781–784. And in this connection, it should be remembered that the rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application, and is expressly repealed ; and instead thereof it is enacted that our statutes "shall be liberally construed, with a view to promote their objects and assist the parties in obtaining justice." Rev. §§ 29, 2622, 5112, 513. And in addition to this rule of liberal construction, we have in the revenue law itself frequent provisions, to the effect that any irregularity, informality, error, etc., shall not affect the validity of the proceedings, or the title derived thereunder, etc. Rev. §§ 748, 753, 76, 770, 786, 787, etc.

It has been frequently held, that if the officer whose duty it is to execute and deliver the certificate of purchase or deed of conveyance refuses to do so, where the purchaser has become entitled to either by a fair and regular purchase, he may compel the execution of them by *man-*

*damus,* or in certain cases, by bill in equity. *Maxcy* v. *Clabaugh, supra ;* *People* v. *Mayor, etc.,* 10 Wend. 395 ; *White* v. *Winnie,* 19 Wis. 304 ; *Harper* v. *Sexton, supra ; Bank of Utica* v. *Mersereau,* 3 Barb. Ch. 528. And it was held in the first of these last cited cases, and also by this court in *Thomas* v. *Kennedy,* 24 Iowa, 397 (401,) that where equity (or *mandamus*) would compel a party to correct a mistake, "it is perfectly competent for him to do voluntarily that which could have been enforced."

And this is reasonable, and must be so from the very nature of the case. For the power or jurisdiction of a court to compel the doing of an act in all cases of *mandamus,* only arises where the corporation, board or person refuses or omits, to do what *the law especially enjoins as a duty,* resulting from an office, trust or station. 3 Blackstone's Comm. 110 ; opinion of MARSHALL, Ch. J., in *Marbury* v. *Madison,* 1 Cranch 137 (168) ; Rev. 1860, § 3761. Hence, unless the law does enjoin it as a duty the court cannot, by *mandamus,* compel the doing of it. The court possesses no inherent or conferred power to authorize the officer or person by its process of *mandamus* to do the particular thing commanded ; and it can only exercise this mandatory authority when the law specially enjoins upon the person commanded the duty of doing that particular thing. How entirely and perfectly absurd is it, then, to say that the officer, the treasurer, cannot do the act, make the new and corrected deed himself voluntarily, but he may be compelled to do it by *mandamus.* If he may be compelled by *mandamus* to make the second and perfect deed according to the facts, conveying the title to the purchaser, it is because the law specially enjoins the doing of it as his duty ; and if the law enjoins it as his duty, then it must follow, inevitably, that the law will hold the act valid when done. A writ of *mandamus* does not give any new power ; it only compels him

to exercise the power which the law has conferred upon him ; and can only be properly issued, *when he omits or refuses* to do the act. If he is willing to do it and does do it, then the court has no basis upon which it can exercise its jurisdiction. The act, therefore, if done voluntarily, must be just as valid as if done under the writ of *mandamus.*

And in the case of *The Bank of Utica* v. *Mersereau,* 3 Barb. Ch. 578, *supra,* which was a bill or suit in chancery, it was held, that, " if this supposed error in the form of the comptroller's deed (given for taxes) was now material, it would not justify a court of equity in declaring that the purchaser had no title to the land by virtue of his purchase; but the comptroller would, if necessary, *be required to give him a new deed in the proper form."* And this, although many years had elapsed since the sale, and execution of the tax deed.

The case of *Gwynne* v. *Neiswanger,* 20 Ohio, 556 (564), does not conflict with any of the foregoing cases, nor does it decide that a court of equity will not correct a mistake in a tax deed or the like, but only that a " majority think, when a tax title *is not good at law,* a court of chancery has no power to aid the purchaser in completing his title ;" and to the same effect is *Altes* v. *Hinckler, et al.,* 36 Ill. 265.

Again, it is argued, that by the making of the first deed, the treasurer exhausts his power to convey, and this, although he failed to convey the title, either by reason of misrecital of facts or otherwise. The answer to this argument is not difficult. The purchaser at the sale (the proceedings prior thereto having conformed to the statute, in so far as to make them valid and binding) acquires the right to have the legal title conveyed to him at the expiration of the time of redemption (in case no redemption is made); and it is the duty of the treasurer to convey that

title to him. Any act of the treasurer which come short of conveying the title (the purchaser having the right thereto), although he may have intended to convey it, does not discharge his duty to convey, and cannot therefore exhaust his power. For, having the power to convey, that power must continue until he does convey, If he should make a deed void on its face, and hence *no deed*, or make a deed to the wrong person, or of the wrong parcel of land, such acts would not exhaust his power to make a valid deed to the right person for the right piece of land. For, having the power to convey the land sold to the purchaser, he can only exhaust it by the doing of that particular thing.

*The right of the purchaser* to be clothed with the legal title is clear and certain by the express terms of the statute ; and *the power of the treasurer* to convey that title to him is also certain from the same statute ; and that this power is *a continuing one* until exercised, or barred by limitation, is well settled, and, indeed, is undisputed. Blackwell on Tax Titles (2d ed.) p. 372, and authorities cited. Now, this right of the purchaser is not satisfied or fulfilled until he is clothed with the legal title ; nor is the duty of the treasurer performed, or his power to convey exhausted, until he does clothe the purchaser with the legal title. He may do any number of acts tending to convey, or make innumerable attempts to convey, but until he does convey the legal title he has not performed his duty, nor exhausted his power, nor satisfied the right of the purchaser. The proposition is too plain to admit of doubt, and too axiomatic to allow of demonstration.

But, it is also urged, that if the treasurer can make a second deed, then he can make three, thirty or a hundred, and thereby the door to fraud will be opened wide and great confusion of titles result. The answers to this

position are numerous ; and, first, it may be remarked, that the presumption of law is, that a public officer will do his duty fairly and honestly, and not that he will act *mala fides* or fraudulently in the discharge of his clear statutory duty ; and hence, to rest an adjudication upon the presumption that he will or may act fraudulently and in disregard of his duty, is to decide upon a presumption in the face of and contrary to law. And, second, if the treasurer's first or second deed passes the title according to the right of the purchaser, and pursuant to his duty under the statute, then any number of deeds thereafter cannot confuse the title or prejudice the owner. If there shall be one hundred good deeds to the same person for the same land, they all will only invest him with one title, and he has a right to that and cannot get more. All the deeds the purchaser may get beyond that which convey to him the title, with which he has the right to be clothed, only increase his costs and expenses and cannot strengthen his title, nor do they confuse it. Further answers it is not necessary to make.

All that has been said upon this question of the right of a purchaser to have, and the duty of the treasurer to make, a second or corrected deed, has been grounded upon the idea that the proceedings prior to the deed have been such as to entitle the purchaser to demand, or authorize the treasurer to make, a deed conveying the title. If there have been such acts or omissions as, under the statute, would defeat the right of the purchaser to have, and the power of the treasurer to convey, the legal title, then, of course, neither the first nor the second and corrected deed can be legally or properly made. For, in every instance, the power of the treasurer to make a deed depends upon the validity of the prior essential steps or proceedings ; and his power to make a second and corrected deed must rest upon the fact of such validity, and

that the correction as made, fairly and legitimately appear from the records themselves, or are properly deducible therefrom, and are not facts *in pais* merely, or resting alone in the memory of the treasurer; and certainly so, when such facts should regularly and legally be made of record.

And since we hold that the tax deed is not in any event conclusive evidence of the facts, material and essential to its validity (see sixth and seventh points of this opinion) the second or corrected deed, cannot in any case operate to the prejudice of the owner or any other person. If the treasurer recites or states material matters in his second deed which are not true, the door is open for any adverse claimant to show them to be unfounded, and thereby defeat the title claimed under it. If they do conform to the truth of the facts, then the former owner is not prejudiced. This holding places all the parties upon the same broad basis of equality which the law guarantees to parties in all other business transactions within its cognizance, to wit: the right to correct errors and mistakes, so likely to intervene, and so frequently intervening, in business transactions between men. The right to rectify any error in any assumed corrected deed, also exists, and is grounded upon the same basis as that whereon the original right itself rests.

VI. It was objected that the evidence of the record of sales, certificates, etc., were incompetent, because the tax deed was conclusive as to those and other facts. On the other hand, it is objected that the deed is neither conclusive nor *prima facie* evidence of any but the three facts specified. The latter objection is based upon this reasoning, to wit: so much of section 784 as declares the treasurer's deed conclusive evidence that all the prerequisites of the law to make a good and valid sale, and vest the title in the purchaser, were done, except as to the three particulars: the liability

5. —— conclusiveness of tax deed: constitutional law.

of the land to taxation, the non-payment of taxes, and non-redemption from sale, is unconstitutional and void; that the declaration that the deed shall be conclusive evidence being inoperative, and there being no statutory declaration that it shall be *prima facie* evidence, the deed stands as at common law, and proof must first be made of the facts authorizing it, before the deed itself can be introduced.

The power of the legislature to declare that the tax deed shall be conclusive evidence that all the prerequisites of the law were complied with has never been directly adjudicated by this court. Such power is denied, as being in violation of that clause of the constitution of our state (and common to all state constitutions) which declares that "no person shall be deprived of life, liberty or property without due process of law." Art. 1, § 9. While the question has never been directly determined by this court, it has nevertheless been referred to in the opinions filed and reported in the following cases: In *Allen* v. *Armstrong*, 16 Iowa, 508, it was said: "After a careful examination of the provisions of the section under consideration (§ 784) in the light of the general principles of the law applicable to such subjects, we must say that there are some matters so vital and essential to any valid exercise of the taxing power, and in relation to which the deed is by our law made conclusive evidence that the law is, as to these, of questionable validity. The case before us does not call for particular specification. We state the principle which must be legally and logically true, in this wise: If any given step or matter in the exercise of the power to tax (as for example, the fact of a levy by the proper authority), is so indispensable, that without its performance no tax can be raised, then that step or matter, whatever it may be, cannot be dispensed with, and with respect to that the owner cannot be con-

cluded from showing the truth, by a mere legislative de-claration to that effect.

In *Adams* v. *Beale, et. ux.*, 19 Iowa, 61, it was stated that "by the statute under which this sale for taxes was made, it is provided (§ 784), that the tax deed shall be *prima facie* evidence, only of the non-payment of the tax, while it is made *conclusive* evidence that the property was listed, assessed, levied, advertised, sold, &c., as required by law. It has been held that it is competent for the legislature to declare that a tax deed shall be *prima facie* evidence of the regularity of prior proceedings. *Allen* v. *Armstrong*, 16 Iowa, 508, and authorities cited. This presumption may be contradicted by other testimony. But whether the legislature may declare in advance that an instrument *false* in fact, shall be *conclusive* evidence of its *truth*, has not yet been determined, certainly not by this court. How far, if at all, such legislative action may be in violation of our Bill of Rights, which declares that "No person shall be deprived of his *life, liberty or property* without due process of law," it is not necessary in this case to decide. Suppose, however, the legislature should declare that an indictment duly found by a grand jury, should be conclusive evidence of the guilt of the accused; would this deprive him " of his liberty without due process of law?" If so, where is the line at which the legislative power begins, and where does it end?"

In *Corbin* v. *Hill*, 21 Iowa, 70, this language is used: The question is as to the sufficiency of the tax warrant. The plaintiff's counsel insists that under the statute, (784), the tax deed is *conclusive* evidence that all the pre-requi-sites of the law in this particular were complied with. But if this was the only ground of reliance, we should have little or no difficulty in reversing the case. The tax war-rant is a material and fundamental step in the sale for

taxes, and the rightfulness of any sale must rest upon the *fact* of such warrant and it is not competent for the legislature to create a presumption which shall override the fact or estop the party proving the truth. But see this case reviewed, and the point really decided therein stated, in the case of *Parker* v. *Sexton.*

Let us now examine the question more carefully and critically in the light of both principle and precedent. The right of taxation and the right of eminent domain are the highest sovereign rights. They are essential to and necessarily inhere in every sovereign power. They are different rights and are differently exercised, and though absolute and sovereign in their character, they are nevertheless to be exercised only in accordance with certain fundamental principles. And although the taking of property by taxation is not strictly, or in its technical sense, the taking of property by due process of law, yet it has never been held or claimed that the legislature might confiscate property for the non-payment of taxes thereon. A process prescribed by law, has ever been held necessary in order to the rightful exercise of the taxing power. No person has ever claimed and certainly no court has ever decided, that it would be competent for a legislature to declare that if the owner of real estate failed to pay the proportion of taxes due thereon, on or before a date named, that any other person might pay the taxes and thereby become owner of the land. But, on the contrary, it has ever been held, that certain steps must be taken before the right to demand the tax, or to sell the property for the non-payment thereof arose. These acts, it is true, are such as are absolutely or relatively necessary in order to ascertain and fix the proper amount of taxes chargeable to each item of property. These steps while they are not by the books technically

" due process of law," nevertheless, are very analogous to the steps ordinarily attending judicial proceedings *in rem*.

There is, first, the *listing and assessing* of the property. These may be likened to the seizure of property by judicial process, whereby the jurisdiction over the *rem* attaches. Then, secondly, there is the *levy* of the tax upon the property, in proportion to its value, so much per centum. This may be likened to a judgment *in rem*, condemning the property to the payment of the claim for which it was seized. Then, thirdly, there is the *tax warrant*, or an express statutory provision, authorizing the collector to sell the property for the payment of the taxes thus levied upon it. This is very like the order or execution issued by a court for the sale of the *rem*, which had before been seized and condemned by it. Then, fourthly, there is *the sale* of the property by the collector under the authority conferred by the tax warrant under the statute, or by the statute itself directly. This is like the sale of the *rem* by the officer under the order or execution issued by the court. These, it must readily be seen, are essential to the exercise of the taxing power; and no revenue law could be of practical effect without them; and it may safely be said that every revenue law contains them. This *listing* is necessary, in order to describe and identify the property; the *assessing*, in order to ascertain its value; the *levy*, in order to fix the proportion or rate of the tax; the *tax warrant*, or statutory provision, in order to authorize some person to receive the taxes and to sell in default of payment; and *the sale*, in order to contract the property to one who will pay the taxes due upon it. These are essential and jurisdictional, and every other provision of every revenue law may safely be said to be directory only, and not essential to the exercise of the taxing power.

The legislature may prescribe the time or manner in

which these essential and jurisdictional acts shall be done, but it cannot, either constitutionally or in the nature of things, provide for passing the title to property for the non-payment of taxes without them. As to the time or manner in which they shall be done, the discretion of the legislature is absolute and supreme, and cannot be judicially controlled or interfered with. Having the right to prescribe the manner, it may also rightfully provide that a failure to comply with its directions as to the manner shall not defeat the end ; or that no person shall question the legality of the manner ; or that any subsequent act or fact shall be either *prima facie* or *conclusive* evidence that the law as to time or manner was complied with. In other words, the legislature, being supreme, may prescribe the time and manner of doing the act, and may make that, or any other time or manner which the persons doing it may adopt, legal and sufficient. But this power of the legislature extends only to those things over which it is supreme. As to the essential and jurisdictional facts, so to speak, which the legislature cannot annul or change, it cannot excuse the non-performance of them, and, of course, cannot make the doing of any other thing a substitute for them or conclusive evidence of their being done. To restate the proposition succinctly : whatever the legislature is at liberty to authorize or not, it may waive or estop denial ; but not so as to that which it must require.

It follows, therefore, upon principle, that it is not competent for the legislature to make the tax deed *conclusive* evidence of a compliance with the essential prerequisities we have above named. That such an enactment is in conflict with the constitutional provision above quoted. That it deprives a man of his property without due process of law. Not that the exercise of the power of taxation is or is not due process of law ; but that, in a suit

between the tax purchaser, or his vendee, and the owner, which is a judicial investigation, "due process of law" means a trial; and a trial involves the right of both parties to produce evidence. If one party only is allowed to produce evidence, and the other is estopped or concluded from producing his, such denial is effectually depriving him of his property without due process of law. Let us turn now to precedent or authority.

Judge Cooley, in his recent and most excellent "Treatise on Constitutional Limitations," says (p. 368): "But there are fixed bounds to the power of the legislature over this subject (rules of evidence) which must not be exceeded. As to what shall be evidence, and who shall assume the burden of proof, its power is unrestricted, so long as its rules are impartial and uniform; but it has no power to establish rules, which, under pretense of regulating evidence, altogether prohibit a party from exhibiting his rights. Except in those cases which fall within the familiar doctrine of estoppel at the common law, or other cases resting upon similar reasons, it would not be in the power of the legislature to declare that a particular item of evidence should preclude a party from establishing his rights in opposition to it. In judicial investigations, the law of the land requires a trial; and there is no trial if only one party is suffered to produce his evidence. A statute making a tax deed conclusive evidence of a complete title, and precluding the original owner from showing its invalidity, would therefore be void, as not a law regulating evidence, but an unconstitutional confiscation of property. *Groesbeck* v. *Seeley*, 13 Mich. 329; *Case* v. *Dean*, 16 id. 13; *White* v. *Flynn*, 23 Ind. 46; *Smith* v. *Cleaveland*, 17 Wis. 556; *Allen* v. *Armstrong*, 16 Iowa, 508; *Wantlan* v. *White*, 19 Ind. 470; *People* v. *Mitchell*, 45 Barb. 212."

Mr. Blackwell, in his elaborate work on tax titles

(p. 100, 1st ed.), says : "That the legislature possesses competent power to change the common-law rules of evidence, and declare that the tax deed itself shall be received in all courts as *prima facie* evidence that all of the prerequisites of the law have been complied with, and thus shift the *onus probandi* from the shoulders of. the purchaser to those of the owner, is conceded. But that the legislature have the further power to declare the deed *conclusive evidence of title*, is denied." See from p. 98 to 112, and authorities cited. Some of the cases cited decide that the legislature cannot, constitutionally, make the deed conclusive evidence, as in *Curry* v. *Hinman*, 11 Ill. 428 ; while other cases limit the application of the words "conclusive evidence," to the immediately connected subject-matter, as, for instance, in New York, where the comptroller's deed is declared to be "conclusive evidence of the regularity of the sale," it is held to apply only to the *regularity* of the *sale*, but not to the power to sell, as in *Doughty* v. *Hope*, 3 Denio, 595 ; *S. C.*, 1 N. Y., 79. See, also, *Tallman* v. *White*, 2 N. Y. 66.; *Jackson* v. *Morse*, 18 Johns. 442 ; *Stryker* v. *Kelley*, 2 Denio, 322 ; *Dyke* v. *Lewis*, 4 id. 237 ; *Sharp* v. *Spier*, 4 Hill, 76 ; *Sharp* v. *Jackson*, id. 92 ; *Stead's Executors* v. *Cource*, 4 Cranch. 303 ; *Bolom* v. *Burdick*, 1 Hill, 130.

The New York statute regulating proceedings against absconding debtors, etc., provided that the appointment of trustees shall be *conclusive evidence* that the debtor therein named was a concealed, absconded or non-resident debtor, and that the appointment and all proceedings previous thereto were regular. 1 R. S. 13, § 62. It was *held*, DENIO, J., delivering the opinion, in *Van Alstyne* v. *Erwine*, 11 N. Y., 331, that, "notwithstanding the strong language of the provision relating to the effect of the appointment of trustees in proceedings by attachment, I do not entertain any doubt but that a person who is sought to

be affected by such an appointment may raise the question that the officer did not acquire jurisdiction to issue the attachment. It is so upon general principles, and the point has been frequently decided." *Matter of Hurd*, 9 Wend. 465 ; *Staples* v. *Fairchild*, 3 N. Y. 41. And in *Wood* v. *Chapin*, 43 N. Y., the same court, in passing upon the same statute, refer to the case of *Van Alstyne* v. *Erwin*, *supra*, and say "it has been held that this language must be qualified by a condition that the case is one in which the officer had acquired jurisdiction. Jurisdiction being shown in this case, we are bound to hold that the appointment of trustees furnishes conclusive, that is, incontrovertible, evidence that all the proceedings were in accordance with the statute." This last case was an action for trespass upon real property, and the plaintiff claimed title through trustees under attachment proceedings, and it, in effect, holds that the legislature cannot make a certificate or instrument conclusive evidence of essential or jurisdictional facts ; but such facts being shown *aliunde*, a certificate or other instrument based thereon may be made conclusive evidence of the regularity of the form or manner of doing the merely directory acts. It is the application of the general rule of the conclusiveness of orders and judgments, where the court or officer making them is shown to have jurisdiction.

In the *Town of Guilford* v. *Supervisors of Chenango*, 13 N. Y. 143, there had been an act of the legislature authorizing the vote of the people of the town and making it final and *conclusive* of the rights of certain parties ; the vote was taken ; another act was passed giving a remedy to the defeated party, notwithstanding the adverse result of the vote, and repealing the first act. *Held*, that the vote was not conclusive, and the party was entitled to the remedy given by the second act. And in *Moore* v. *Mayor*, *etc.*, 8 N. Y. 110, the action was by a widow against the

corporation of New York, for her dower in lands taken for public use, in the lifetime of her husband, under the right of *eminent domain*, pursuant to a statute therefor. The statute made the report of the commissioners, when confirmed, *conclusive* of the rights of the parties. The court *held*, that since the owner of the fee, the husband, was a party to the proceedings, the result thereof was binding upon the wife; not because the statute made it conclusive, but because the wife had no interest in the land at the time of its condemnation to the public use.

In *The People ex rel*, etc., v. *Mitchell et al.*, 35 N. Y, 55, it was held by a majority of the court (three judges dissenting), that the legislature might, by a curative act, make certain affidavits, taken under a previous act, conclusive evidence of certain facts stated in them, notwithstanding their defects. The court say, that the purpose is apparent from the further provisions, that " no defects in any such affidavits shall invalidate such proof," and that " the bonds shall be valid and binding on said town, without reference to the form or sufficiency of such affidavits." This case simply construes the curative act, and holds, in effect, that the failure to comply with the original act shall not defeat the right.   See *S. C.* in 45 Barb. 208.   It was evidently competent for the legislature to effect the result in two ways, either by declaring the bonds valid and binding, nothwithstanding the failure to comply with all the forms of the law, or to make the affidavits conclusive proof of compliance therewith.   See, as to power of legislature to pass curative and retroactive laws, *The State, etc.*, v. *Squires, etc.*, 26 Iowa, 340, and authorities there cited.

The case of *Smith* v. *Cleaveland*, 17 Wis. 556, appears to hold that it is competent for the legislature to make the tax deed conclusive; but the opinion expressly states that " the objections taken, and for which the plaintiff seeks to impeach the title of the defendants, go merely to the regu-

larity of the proceedings. The groundwork and essence of the transactions which resulted in the execution and delivery of the deed remain untouched." It may be remarked that Judge Cooley in his Constitutional Limitations, note to page 369, cites this case as showing " how far the legislature may make the tax deed conclusive evidence that *mere irregularities* have not intervened in the proceedings." If the language of the opinion goes further than this, it is, as to such excess, doubtless, but mere *dictum.* There is referred to in the opinion and appended to the report of this case in the form of a *note*, an opinion by MILLER, U. S. district judge for the district of Wisconsin, in the case of *Lord* v. *The Milwaukee & Mississippi Railroad Co.*, seeming to sustain the broad language used by DIXON, C. J., in the main case ; but the facts in the last case are not given so as to enable the reader to determine whether, as to its full extent, it is *adjudication* or partly *dictum.* But in the subsequent case of *Smith* v. *Smith, etc.*, 19 Wis. 615, DIXON, C. J., in delivering the opinion of the court, says : " The legislature have power to prescribe the form of proceedings in the assessment and collection of taxes *and, in matters of form*, may declare what steps shall or shall not be essential to the validity of a tax sale or tax deed," and cites in support thereof *Smith* v. *Cleaveland, supra.* In view of all the facts and surroundings of the case, we do not think it can be recognized as deciding that it is competent for the legislature to make a tax deed conclusive evidence of title or of a compliance with the essential prerequisites of the statute. We have selected the foregoing cases, as being the strongest found in the reports within our reach, tending to sustain the power of the legislature to declare an act or instrument conclusive evidence of a legal right or title. None of them *decide* in favor of such power. Nor do the following cases so decide; but we have not space for an extended

statement or review of them : *Rhinehart* v. *Schuyler*, 2 Gilmn. 473 ; *Hannel* v. *Smith*, 15 Ohio, 134 ; *The People, etc.* v. *The Mayor, etc.*, 10 Wend. 398 ; *Gwynne* v. *Neiswanger*, 18 Ohio, 400 ; *Steadman* v. *Planters' Bank*, 2 Eng. (Ark.) 424.

In *Wantlan* v. *White*, 19 Ind. 470, which was a proceeding by *habeus corpus* in behalf of an enlisted minor, who had taken the usual oath of his age. His discharge was resisted on the ground that the act of congress provided that "the oath of enlistment taken by the recruit shall be conclusive as to his age." The court held, "that it is not competent for the legislative power to declare what shall be conclusive evidence of a fact." And in *Gavin* v. *Sherman*, 23 Ind. 32, the court, in passing upon a statute which declared that the "tax deed shall be conclusive evidence of the truth of all the facts therein recited," held, that it should be strictly construed ; and expressly waived deciding the question whether the legislature had the power to pass such a statute. The court do not in any way refer to *Wantlan* v. *White*, *supra*. But at the same term, the court, in the case of *White* v. *Flynn*, 23 Ind. 46, use the following language : "The statute enacts that the deed shall be conclusive evidence of the facts recited, etc. Now, we do not suppose the legislature could make such an enactment. See *Wantlan* v. *White*, 10 Ind. 470."

In *Groesbeck* v. *Seeley*, 13 Mich. 329; *Quinlon* v. *Rogers*, 12 id. 169 ; and *Case Dean et al.*, 16 id. 12, a statute making the tax deeds conclusive evidence of title was held absolutely void, as being in conflict with the constitutional provision guaranteeing due process of law for the protection of life, liberty and property.

But it is argued that this legislation, declaring the tax deed conclusive evidence, etc., is but a statute of limitations ; for that, it simply denies the party the right to

McCready v. Sexton & Son.

contest certain facts which took place, or are alleged to have taken place, three years before the making of the deed. For under our statute the deed is not to be made until three years after the sale, during which time the right of redemption exists. Rev. § 779. And this three years, it is argued, is the time given by the legislature, and the limitation within which to contest these facts.

That it is competent for the legislature to pass statutes of limitation cannot now be successfully controverted. But there is a limit to this power, to this extent, at least : the statute thus enacting must afford a reasonable time and opportunity for the party to assert his right before the bar can be effectual. Nor can it be denied that statutes of limitations are in the nature of conclusive presumptions. 1 Greenl. But we do not think that any fair rule of construction of statutes would authorize us to treat this statute as one of limitation. It does not purport to be such ; and in the same act there is a section (790) providing a limitation for actions for the recovery of property sold for non-payment of taxes. And, again, if the deed is conclusive evidence, what is to prevent a corrupt treasurer (if there should ever be one), from making deeds without authority and contrary to the facts, and in such cases (and the conclusiveness is only needed in them), where is the reasonable time and opportunity for a party to assert his rights ? See *Groesbeck* v. *Seeley*, 13 Mich. 229 (342).

We conclude, therefore, upon principle as well as upon precedent and authority, that the legislature does not possess the power to declare the tax deed to be conclusive evidence of compliance with those matters which are *essential* to the exercise of the taxing power. But as to the *non-essentials or matters merely directory*, such power may exist, and the deed become conclusive of their due performance.

VII. The further question then arises, can the tax deed be received as *prima facie* evidence of compliance with the essential pre-requisites as to which, and others the statute declares it to be *conclusive evidence?* As we have already seen, it is competent and constitutional for the legislature to make the tax deed *prima facie* evidence of its own validity, but they have not the constitutional power to make it *conclusive* evidence.

*6. —— act void in part.*

The act being unconstitutional in so far as it purports to make the deed "conclusive" evidence, the question arises as to how far this unconstitutionality affects the entire act. It was held by this court, in *Santo* v. *The State*, 2 Iowa, 165 (205), that "an act void, because unconstitutional in part, is not necessarily void for the whole. If sufficient remains to effect its object, without the aid of the invalid portion, the latter only shall be rejected, and the former shall stand. This doctrine is clearly maintained in the Massachussetts cases. *Fisher* v. *McGirr*, and other cases, 1 Gray, 1; 6 How. (Mich.) 625; *State* v. *Cox*, 3 Eng. (Ark.) 437; *Commonwealth* v. *Kimball*, 24 Pick. 361; *Morris* v. *Boston*, 4 Mich. 288; *Clark* v. *Ellis*, 2 Blackf. 10."

In the case last cited by the court (*Clark* v. *Ellis*), the legislature had by an act authorized a justice of the peace to impanel a jury, and try cases of riots, etc., and to fine the offender agreeably to the verdict of the jury, not exceeding twenty dollars. But under the constitution the legislature could not authorize a fine exceeding three dollars, which was the amount of the fine in that case. The court held the act constitutional to the extent of the power of the legislature, and uses the following language: "We have heretofore decided that a part of an act of assembly being unconstitutional does not affect a constitutional part of the same act relative to the same sub-

ject.   That part which is unconstitutional *is considered
as if stricken out of the act;* and if enough remains to be
intelligibly acted upon, it is considered as the law of the
land.   If this were done in relation to this act of assem-
bly, the justice of the peace would still retain a jurisdic-
tion in cases of assault and battery, and might give a
definite sentence where the case merited a fine no higher
than three dollars."

To the same effect is the cases of *McClay* v. *Love*, 25
Cal. 367, where an act of the legislature prohibited any
incumbrance of the wife's property, unless by " a writing
signed by the husband and wife."   The court held that
the requirement that the husband should join was uncon-
stitutional, and that these words " husband and " should
therefore be deemed omitted and the remaining words
should have full force and effect.        *        *        * That
requiring the signature of the husband is only an addi-
tional safeguard, and not so vitally connected with the
act that it cannot be stricken out without violating the
whole section.   Indeed the authorities are uniform in sup-
port of this general doctrine.   *Childs* v. *Showers*, 18 Iowa,
262 ;   *The People* v. *Hill*, 7 Cal. 97 ;   *Clark* v. *Hitching*,
3 Gray, 486; *Brown* v. *Beatty*, 34 Miss. 242 ; *Mobile
R. R. Co.* v. *State*, 26 Ala. 769 ; *State* v. *Clury*, 3
Dutcher, 253 ; *Nelson* v. *The People*, 33 Ill. 398; *State*
v. *Copeland*, 3 R. I. 33 ; *State* v. *Snow*, 3 id.  64 ; *Shep-
ardson* v. *Milwaukee R. R. Co.*, 6 Wis.  605 ; *Phillips* v.
*New York*, 1 Hilt (N. Y. C. P.) 482 ; Cooley's Const.
Lim. 176, *et seq.*, and authorities there cited.

In this case, by the section of the act under considera-
tion, the legislature undertook to declare two things :
first, that the tax deed should be evidence of its own
validity ; and second, that it should be conclusive, that
is that no evidence should be received to contradict it.
This latter declaration, so far as it applies to matters

material and essential to the taxing power, as we have seen, it was not competent for the legislature to do, and hence, as to such matters, the word "conclusive" must be regarded as stricken out. The tax deed would thereby be made evidence, but not conclusive evidence of those facts.

It follows from these conclusions, that the judgment of the district court, for the error in the instructions of the court on the subject of fraud, and the finding of the jury thereon, must be reversed.

Reversed.

WRIGHT, J. — As shown by the foregoing opinion, this was an action to recover one hundred and sixty acres of land. Plaintiff counts upon his "original entry," made in March, 1855 ; defendant upon a tax title under a sale made in October, 1860, and deed thereon of October 6, 1866. This action was commenced within five days from the date of the deed. Upon the issues joined there was a trial to a jury ; verdict, generally, for plaintiff, and specially, that more than five years had elapsed from the date of the sale before the commencement of this suit ; that there was fraud in the sale and in obtaining the deed ; and there was judgment accordingly.

Thus we have the general features of this controversy. The questions made are most of them of no special interest beyond this case, while others have a public or general interest, and have received from each member of this court the most deliberate consideration. I proceed to state my views upon them, as briefly as possible, in view of their importance and difficulty.

I. I concede that defendants' objection to the introduction of the "book of original entries," offered by plaintiff to show title, on the ground, that, as his petition shows the land was sold for taxes more than five years before

McCready v. Sexton & Son.

the commencement of the suit, he cannot take a further step until he establishes his minority or insanity at the time of the sale, was properly overruled. And this, first, because his title was expressly put in issue, and proof thereon was necessary before he could recover. Then, in the second place, without some such proof he could not be in a position to contest the alleged tax title. And, finally, the five years mentioned in the special statute of limitations (Rev. § 790) dates from the execution and recording of the deed, and not from the day the property was struck off by the officer at the sale. *Eldridge* v. *Kuehl*, 27 Iowa, 160 ; *Henderson* v. *Oliver*, 28 id. 20. And thus I dispose of the present question, as also a similar point made upon the testimony, the instructions and motion for a new trial.

II. The land was sold by the treasurer October 19, 1860. There is no evidence whatever that the sale had been adjourned to a subsequent day. All that is said in the instructions, therefore, as to the sale being irregular if there was no adjournment by the treasurer, by record or otherwise, was out of place. And this the more so, because, in any view of the statute, the jury had nothing to do with those matters which were not vital to the exercise of the power claimed. Under the statute the failure claimed would, at most, be but an irregularity. Rev. §§ 773, 767 ; *Allen* v. *Armstrong*, 16 Iowa, 508 ; *Stuart* v. *Corbin*, 25 id. 144 ; *Eldridge* v. *Kuehl, supra*.

III. Much is said in the instructions about fraud in making and obtaining the deed, as, also, on defendants' part, in purchasing the land ; and the jury, it will be remembered, found specially that there was fraud in both.

I feel constrained to hold that there was no evidence whatever to warrant either the instruction or finding. It is true that a tax title may be defeated if it appears that fraud was committed by either the officer or the purchaser

in connection with the sale. Last clause of Rev. § 784. Here, however, there was no semblance of either legal or actual fraud, or fraud in fact, either on the part of the purchaser or officer. The matters referred to as constituting fraud, as that the land was sold in *gross*, that the treasurer made two deeds, and the like, are of such a nature as to defeat, or otherwise, defendants' title. This, however, not upon the ground of fraud, but because they go to the question of legal power, in this method, to invest defendants with the title. And herein as we shall see, is the great and vital question in the case, for just here the whole controversy hinges.

IV. The defendants asked an instruction to the effect that the deed was *prima facie* evidence that the taxes were due, and that, if that presumption was not rebutted by proof that the land was not subject to taxation, or that the taxes had been paid, then the treasurer's duty was to make the sale and deed, and defendants would be entitled to the premises until the same was set aside, etc. This was properly refused. And this, to say nothing more because it denied to plaintiff the right to rebut the presumption arising from the deed, by proof of redemption. By the law it is expressly provided that the deed may be defeated by proof that the property was redeemed from the sale. The instruction was, therefore, not correct as an abstract proposition, and, as asked, would have misstated the law. Not only so, but it ignores the right of the owner to resist the validity of the tax title upon the ground of fraud. And this he may do, in my judgment, under the statute and our system of pleading, without averring it in his petition or by replication. He could do it in ordinary cases, certainly, without replication, when there is no set-off, counterclaim or cross demand. Rev. § 2895. And the language of section 784: "In all cases where the owner of land sold for taxes shall resist the validity of

such tax title, such owner may show and prove fraud," etc., would not seem to indicate any departure from the rule of the general statute. *Smith* v. *Milburn*, 17 Iowa, 30, is almost directly in point. And see *Carleton* v. *Byington*, 24 id. 172; *Noble* v. *Steamboat Illinois*, 23 id. 109; *Finley* v. *Brown*, 22 id. 538 (directly in point). *Gray* v. *Earl*, 13 id. 188, cited by appellants, is not in conflict. The party relying on the fraud, the statute and the action, were all different; and the case in no just sense is analogous to the one before us. And see, also, *Hamilton* v. *State Bank*, 25 Iowa, 593.

V. As already suggested, these views would result in the reversal of the case. They leave untouched, however, other and more vital questions — questions which counsel have discussed and which must arise upon the new trial. Indeed, one of them — the validity of the deed upon which defendants rely, the treasurer having made one — is apparently in our pathway; for plaintiff has the title which entitles him to maintain this action and recover the land, if defendants have not a valid tax deed; and this latter inquiry depends, in part at least, and it may be vitally as to both parties, upon the question whether the treasurer had the power to make this second deed, whether made to correct a mistake or error the first, or for any other purpose. Then, too, if he had the power, the question arises, how far is the deed conclusive, and was the court right in allowing plaintiff to go back of it to show, from the certificate and record kept by the clerk and treasurer, that the land was sold *in gross*, or otherwise than as recited in the deed? And the latter inquiry involves an examination of the statute, its meaning, and the power of the legislature to pass the same — inquiries which have been frequently stated in this court, but, thus far, without solution.

Believing that the best interests of the state demand

that they should no longer remain open, the subject of speculation, doubt and uncertainty, it has been deemed advisable in this case to arrive, as far as possible, at some definite result ; and in this conclusion I do most heartily concur.

*And first as to the law.* The deed is made *prima facie* evidence that the property was subject to taxation, that the taxes were not paid, and that there was no redemption. Aside from the cases of fraud and mistake mentioned in the *proviso,* in the concluding part of the section under consideration (784), the party claiming adverse to the tax deed is required to show the absence of one of these three things, where it has been executed by the treasurer substantially as required by law. As to all other matters the deed is made *conclusive* evidence. I say as to *all* other matters, and this is so, in effect. But that all may be the better enabled to see the meaning of the statute, I quote therefrom : The deed "shall be conclusive evidence of the following facts : 1. That the property had been listed and assessed at the time and in the manner required by law. 2. That the taxes were levied according to law. 3. That the property was advertised for sale in the manner and for the length of time required by law. 4. That the property was sold for taxes, as stated in the deed. 5. That the grantee named in the deed was the purchaser. 6. That the sale was conducted in the manner required by law. 7. That all the prerequisites of the law were complied with by all the officers whose duty it was to have any part or action in any transaction relating to or affecting the title conveyed, or purporting to be conveyed, by the deed, from the listing and valuation of the property up to the execution of the deed, both inclusive ; and that all things required by law to make a good and valid sale, and to vest the title in the purchaser, were done, except in

McCready v. Sexton & Son.

regard to the three points named in the section, wherein the deed shall be *prima facie* evidence only." If these provisions are not obnoxious to constitutional objections, then, as the evidence offered by the certificate, records of the clerk and treasurer, and the witness Graham, tended to contradict the deed, and cannot be said to come within either of the "three points" named in the statute, it would follow that there was error in its reception.

Are they thus obnoxious? The argument against the validity of the statute in brief is this: By the constitution it is declared that no person shall be deprived of his life, liberty or property without due process of law. The legislature may without doubt change the common-law rules of evidence, and hence make a tax deed *prima facie* evidence of all those matters which by the common law had to be shown to admit it in proof; but to declare it conclusive evidence of title, or to give it such conclusive effect as shall deprive a party of the right to prove the absence of those matters which are indispensable to the raising of the tax or the exercise of the taxing power, would be judicial legislation; would deprive him of all defense; would, under the pretense of regulating remedies and giving rules of evidence, enable the law-making power to violate the obligation of contracts, and divest the citizen of his estate or property without any, or at least without due, process of law.

And having thus given briefly the statute and argument, I ought, of course, reasonably and properly, to inquire whether we have heretofore ruled any thing upon this point? As already suggested, nothing directly. And yet there has been much said that will give us more or less aid. I cannot do more than refer to some of the more pertinent cases. Thus, in *Allen v. Armstrong, supra*, it is said: "If any given step or method in the exercise of the power of tax (as for example the fact of a levy by

the proper authority) is so indispensable that without its performance no tax can be raised, then that step or method, whatever it may be, cannot be dispensed with, and with respect to that, the owner cannot be concluded, from showing the truth, by a mere legislative declaration to that effect." And more might be quoted of the same purport, but this must now suffice.

In *Adams* v. *Beal*, 19 Iowa, 61, the question whether the legislature might declare, in advance, that an instrument, *false in fact* should be conclusive evidence *of its truth*, was stated but not decided.

Then in *Corbin* v. *Hill*, 21 Iowa, 70, it was said that a tax warrant was a material and fundamental step in the sale, and the rightfulness of the sale must rest upon the *fact* of such warrant, and that the legislature could not create a presumption which should override the fact or estop the party from proving the truth.

In *Ackley* v. *Sexton*, 24 Iowa, 320, whether evidence in opposition to the legal effect of the deed could be given, with several other questions, were left undetermined. And while the precise question now before us was raised and fully argued in *Eldridge* v. *Kuehl*, *supra*, yet for the reason therein stated (the absence of a member of the court at the argument) it was not decided.

In *McNamara* v. *Estes*, 22 Iowa, 246, it was said that recitals in a tax deed of the fact of sale are not conclusive. The owner may show, in the face of such recitals, that in truth no sale was made. There the offer was to prove "no sale" against the face of the deed, and not alleged irregularities; and because this was denied, and upon no other ground, the judgment was reversed. And these cases, I believe, cover all that has been said upon the question. They suggest objections to the statute, intimate difficulties, lay down some general rules, and yet really leave open the vital question, and untouched

the construction which should be given to the statute. In several instances I know tax titles have been upheld (as in *Allen* v. *Armstrong*, *supra; Negus* v. *Yancey & Smith*, 22 id. 57 ; *S. C.*, 23 id. 417 ; *Finley* v. *Brown*, 22 id. 538, and others which might be cited) and yet it is but proper to say that in these cases the question now before us was neither raised nor decided.

What construction, then, should the statute receive ? I think it may be so construed as to uphold its every provision, without constitutional conflict. And here I may be allowed to suggest some matters of a general nature.

This law has remained upon the statute book for more than ten years. In that time the legislature has been in regular and extra session seven times ; and yet this section has not been repealed, nor in any way modified or amended. This is most unusual as applied to the revenue laws. And when we consider, in addition, that this act was passed at a time when the revenue remained largely uncollected, and was intended to meet and correct an admitted evil, we have an argument, so far as legislative interpretation goes, in favor of the validity of this statute. Then, again, I have nothing to do with its rigor, its severity or its policy. My duty is to execute the law as given me, if not in conflict with the constitution. And this I am to do, however reluctant I may be to encourage the cupidity of the heartless speculator in his neighbors' misfortunes and necessities, in this just as in all other cases.

A step or matter so indispensable that without its performance no tax can be raised, cannot be omitted. *Allen* v. *Armstrong*, *supra*. This is plain enough. An illustration of this general thought is found in the case there put of "the fact of levy," and afterward more pointedly applied in *McNamara* v. *Estes*, *supra*. So, too, in the case of a tax warrant, the fact of its existence.

*Corbin* v. *Hill, supra.* Such matters, both logically and rightly, go to the very foundation of the exercise of the power to sell. And if the legislature have undertaken to declare that these essentials may be dispensed with, the act is void. This, however, I do not believe was ever intended. One or two illustrations drawn from the statute will serve to present my views. The deed is made conclusive evidence "that the property has been listed and assessed at the time and *in the manner required by law.*" But this does not exclude evidence that there was *no listing* and *no assessment.* Without these, *in fact,* the tax could not be raised. If, however, the property was listed and assessed, then the deed is conclusive evidence that the officers having the same in charge discharged their duty; that these things were done "in the manner and at the time required by law." In other words, as to the *manner* of doing these things, the deed protects the purchaser, but does not conclude the owner as to the *fact.* And an examination of *Allen* v. *Armstrong, supra,* will show that upon no other principle can that case be supported, and so of the other cases referred to above. If this is not so—if this view is not correct—then why not say that the deed shall be conclusive evidence that the property "was listed and assessed?" Why the words, "at the time and in the manner required by law?" These latter words are to me most significant, and they will be esteemed the more so, when we see that they are found, either these words or others of like import, in connection with all those matters of which the deed is made conclusive evidence. Thus the deed is conclusive evidence that the taxes were levied *according to law;* that the property was *advertised in the manner and for the time required by law,* and so on. But the legislature never intended to say that the owner was concluded from showing that there *never was any tax levied;* that there *never was any notice*

*and never any sale.* There is a broad distinction between an entire failure to exercise a power and its defective exercise. And hence the township clerk could not levy the tax, nor could the governor of the state make the sale, for they have neither the power nor the semblance of power to do these things; the whole and every part of their proceedings would be void. And could not these facts be shown? Certainly, and this, because in such case there was no levy, no taxation, no tax to be paid, no penalty arising; all was void, and void things are no things, and no one is concluded.

So, too, if the treasurer should, without a *levy, without notice* of any kind, and *without a sale*, make a deed, no one would pretend that such a deed would be conclusive evidence that the law had been complied with. In that case there would be an entire *failure* to exercise the power, and not a *defective* exercise of it, in the several particulars leading to the ultimate act of making the deed. And then the thought might be further illustrated by reference to other provisions in this connection, but these must suffice.

But I am reminded that the seventh subdivision of the section means more than this, for that this declares that the owner, before he can defeat the title of the purchaser, must show the absence of one of the three things of which the deed is made but *prima facie* evidence; that to show anything else will avail nothing. To this I answer:

*First.* The property must be held by the purchaser, "under and by virtue of a deed executed substantially as aforesaid," or as required by law. If there was *no power* then in no sense was the deed executed substantially as required. But if there was power, and that power was irregularly exercised, then the matters are between the treasurer and the owner. The purchaser is protected, for, as to him, the law was substantially complied with.

*Second.* If there was no attempt to exercise the power to list and assess the property, to make the levy, to give notice, and to sell, then the property was not subject to taxation, there were no taxes to pay, no sale from which to redeem. I say there was none, for there was none in law. If taxation (but without law), and sale *in fact* then, under any statute, and under any rule of common sense or law, the proceedings would be the merest sham. And as, by the statute, it is competent to show that the property was not subject to taxation (for the deed is only *prima facie* evidence of this fact), I know of no more effectual way of doing this, than to show that neither this nor any other property was ever listed or assessed,—that there never was any levy.

In this way it would appear as effectually that the property was not subject to taxation as though the proof showed that it belonged to the state, to a county, or to a church, at the time of the levy and sale. For it would neither be subject to taxation, nor would there be any taxes to pay.

*Third.* The other view renders it necessary to defeat the legislative will as clearly expressed, because in conflict with the constitution. And this, I need not say, is to be avoided if possible. This alone ought to be sufficient to sustain my position ; for in this way, as I conceive may the law be carried out. In any other we must declare it invalid and unconstitutional, a duty always delicate, and never to be exercised except in the clearest case. Our duty is to seek a construction which shall uphold the law, and not to resort to the most responsible power unless its exercise becomes unavoidable. The infraction, it is admitted must be plain and palpable ; and though I may not be satisfied of its constitutionality, yet if not satisfied of its unconstitutionality, my duty to sustain the law is plain. Here, then, are two constructions, one consistent

McCready v. Sexton & Son.

with the constitution, and the other violative of it. Which shall we adopt? The answer, it seems to me, is and ought to be easy.

*Fourth.*—The construction violates no rule of right, of law, or of evidence. Without such a statute as ours as to the effect of the deed, it would be evidence of nothing, not even of its execution. The burden would be upon the party claiming under it to show a strict compliance with all the provisions of the statute, by all the officers having its execution in charge. In the several states innovations, radical or otherwise, have been made from time to time upon this rule of the common law, and this is true looking at the legislation of our own state. Thus by the law of 1844 (ch. 21, § 66, p. 38), the deed was given the same force and effect as deeds made by sheriffs upon sales under execution from the district court. And this same rule was declared by the act of 1847. Ch. 100, § 57, p. 146. The code of 1851 (ch. 37, § 503), on the other hand, made the deed presumptive evidence of the regularity of all prior proceedings. And this was followed literally in the act of 1858. Ch. 152, § 56. In Michigan the rule at one time was, that the deed vested an absolute estate in fee simple, and should be conclusive evidence that the sale was regular, according to the provisions of the act. So in New York, that it " shall be conclusive evidence of the regularity of the sale." In Tennessee, that it shall be *prima facie* evidence of a compliance with the prerequisites of the law; and others might be cited. See Blackwell, Tax Tit. 82, *et seq.* In none of these have we such a statute as the one now before us. It is true that of Illinois, contained in *Hinman* v. *Pope*, 1 Gilmn. 131, is in many respects like ours. But there the law required a report or return of delinquents to the circuit court, the entry of judgment and precept to sell, etc. It was held that the party claiming

under the deed must produce a judgment before reading his deed in evidence, for the law had not declared it to be evidence of that fact.    The effect, however, of the conclusive part of the statute, so far as related to any constitutional question, was neither suggested nor discussed. In *Curry* v. *Hinman*, 11 Illinois, 428, the language of CARTER, J., is quite apposite to the present question, for I too should be very " loth to say that the legislature intended to create a permanent disability, which the party could by no possibility remove.    To debar an innocent party altogether of the privilege to prosecute or defend a right in a court of justice is equivalent to taking the right from him altogether.    The latter the legislature cannot constitutionally do, the former we will not presume they intended to do."

*Fifth.* This is a rule of evidence.    The party failed to pay his taxes upon property subject to taxation, and also failed to redeem.    We say this, because he is at liberty to show otherwise if he can.    Failing to do this, he has failed in the discharge of a duty which every man owes the government.    He is no longer strictly innocent.    His property is liable for its due proportion of the public burdens.    The law-making power inquires, How can this duty, as to such delinquent, best be enforced ?    The answer is not, as heretofore, by declaring the deed as effectual as that of the sheriff in execution sales, nor by making it *prima facie* evidence merely of the regularity of all prior proceedings, but *conclusive*, not of those matters essential and indispensable to the exercise of power, nor of the *fact* of such exercise, but that the levy made (one being made) was according to the law ; and so as to the other requirements, debarring the party of the right to show departure from the provisions of the statute, which under the rule requiring proof of *actual* compliance, would defeat the sale.    The party has thus preserved

to him every right which he can reasonably ask to defend himself in a court of justice.

*Sixth.* By no means disposed to extend the operation of the law beyond its words, I must still remember that it is quite a mistake to suppose that the owner of the land is deprived of all defense, or that he loses any safeguard which he has a right to claim as essential to the protection of his estate. It is not as though the statute had made the deed conclusive of every thing or upon every point. The argument against such legislation would of course be unanswerable, and the authorities, I admit, are all one way. In this case, in addition to the protection already suggested, there remains the most important provision securing the owner' against the mistake of the treasurer in making his entry of payment, and the still more important one protecting him against the fraud of the officer or purchaser. Under this latter provision the field is almost boundless. And under such a statute, to say that a party is precluded from all defenses, that he is deprived of his property without due process of law, that he cannot prove the absence of those matters indispensable to the protection of his estate, is, to my mind, without the least warrant either in reason or upon authority. No case can be found, in my opinion, holding such a statute invalid. We should not make haste to furnish one. It is not a case where, in the forcible language of *Adams* v. *Beale*, 19 Iowa, 61, an instrument, false in fact, is declared to be conclusive evidence of its truth. For if false, the falsehood relates to those matters which belong more to the orderly conduct of the proceedings than to matters indispensable (the latter is otherwise provided for and secured), and, therefore, whether true or false is quite unimportant. Not only so, but suppose it to be so, that it really declares that the false is true? What is this more than the application of the doctrine of estoppel? **The**

tax payer, there being no mistake nor fraud, has failed to pay his tax upon property liable to taxation, and to redeem after the sale, and now the law says, because of this failure you are estopped, there being a sale, from denying that it was conducted in the manner required by law. The rule is a familiar one, and, in other cases, of every-day application. I remark in conclusion, on this part of the case, that I do not forget that in *Childs* v. *Shower*, 18 id. 261, it was held that the party claiming under the tax deed might show, notwithstanding its recital, that the property was not sold for a gross sum. There, however, he was seeking to recover for his improvements under the "occupying claimant law," and claimed to have color of title as a purchaser, in good faith, at a tax sale. The proof was admitted in aid of and to support an equity. The question was in equity, and a large element was the good faith of the purchaser. If he purchased in good faith, and in separate parcels, and made his improvements in like good faith, the recital in the deed, it was held, should not conclude him. Then the question of title was out of the way. That had already been adjudged against the occupying claimant, as the very statement of the case presupposes. So, too, I know that in *Boardman* v. *Bourne*, 20 id. 134 (and cases following it), we held, notwithstanding this statute, that if the deed showed upon its face a departure from the provisions of the law, it was logically as well as legally absurd to say that it was conclusive evidence that the sale was conducted in the manner required by law. And so I say yet. But this is quite another thing from allowing a party to go back of the deed and contradict its recitals, as to those matters, of which, as I have attempted to explain, it is made conclusive evidence.

I may be allowed to cite, in conclusion, the following cases, bearing more or less directly upon the question

discussed : *McNamara* v. *Estes*, 22 Iowa, 259 ; *Torrey* v. *Milbury* 21 Pick. 67 ; *Kelley* v. *Corson*, 11 Wis. 1 ; *Tallman* v. *Janesville*, 17 id. 71 ; *People* v. *Seymour*, 16 Cal. 332 ; *Rich* v. *Flanders*, 39 N. H. 304 ; *Jackson* v. *Morse*, 18 Johns. 441. My mind, then, is that the statute as above construed is constitutional. The deed is receivable in evidence without proof of compliance with the steps leading to the sale.

If the intention was to make the deed *conclusive* evidence of the *fact* of *levy*, *sale*, etc., then I believe the rule stated in the foregoing opinion—that the statute may be held valid as to all except its "*conclusive feature*" — may be sustained. But, according to my construction, the deed goes in evidence without further proof, and carries with it the title, unless defeated because of the omission of one of those essentials of which it is made but *prima facie* evidence ; but does not conclude the party from showing that there was in fact no *levy*, no *sale* and the like, while it is conclusive, that, *if* a *levy*, it was made according to law ; if a *sale*, it was conducted *in the manner required by law*, and so of other matters in the same connection.

VI. It now remains to inquire whether the treasurer had the power to make a second deed, or, in other words, having once made a deed, was his power, in this respect (when exercised voluntarily), entirely exhausted or at an end, and did the one now under consideration, or could it, convey any title ? And here I confess to more doubt than upon any question arising in the case. If the power was exhausted upon the making of the first deed, then it was competent to show that fact, for in no other way could the plaintiff more effectually defeat a recovery upon the one offered in evidence. And the inquiry here is, as to the effect of this first deed, rather than the method taken for proving it. For, if this was technically irregu-

lar, the *fact* of its existence remains undisputed. And *this* is what endangers the defense.

In *Finley* v. *Brown*, 22 Iowa, 538, both deeds were admitted in evidence, the treasurer, because, of a supposed informality in the first, being prevailed upon to make the second instanter. This, as is inferred from the opinion, cured the mistake, and it was held that the plaintiff (the owner of the land) suffered no prejudice thereby, and could not complain. I admit that while the question of *power* to make the second deed is not discussed, the decision could not well have been made without either taking it for granted, or holding it to exist either under the statute or upon general principles.

*Byam* v. *Cook*, 21 Iowa, 392, was in equity, the plaintiff (owner of the tax title) claiming that defendant held the property in trust for him. It was found, however, that the tax deed was invalid, because of the defect ruled in *Boardman* v. *Bourne, supra*, and plaintiff claimed that defendant (the treasurer) should be decreed to make a new and good deed in conformity with the facts as shown by the certificate of sale and otherwise. It was held, however, that the petition was not framed with any such view, that it sought no such relief, and thus, again, the question of right to compel, and power to execute, was left undetermined. In *Ackley* v. *Sexton*, 26 id. 320, the precise question, "whether the treasurer, having made one deed, can subsequently, upon his own motion make another, reciting differently the facts concerning the records of sale," is stated, but all expression of opinion therein expressly withheld.

In *Harper* v. *Sexton*, 22 Iowa, 442, the tax title purchaser, having a defective deed (as in *Boardman* v. *Bourne, supra*), by his cross-petition making the treasurer a party, sought the execution of a good and valid deed, etc. The prayer was treated in the nature of one for a specific per-

McCready v. Sexton & Son.

formance ; but was denied because the consideration was not adequate, the contract not fair in all its parts, and for other reasons. As bearing upon the question now before us, it was said : "It is doubtless true that the relief asked might in a proper and clear case be obtained by *manda-mus*, or possibly by suit in equity."

These are all the cases in this court bearing upon the question. If it be said that *Finley* v. *Brown* recognizes the right to make a second deed, its circumstances and what is really decided must not be overlooked, nor the further fact that the other cases cited (and especially *Ackley* v. *Sexton*, decided afterward) are hardly in accord with such a construction. Certain it is, there would be little use of "expressly withholding an opinion" upon the subject if it had been determined. I think, therefore, the correct view is, that the precise question has never been authoritatively determined by this court, and that we now pass upon it for the first time, as one of *power*.

And here it must be borne in mind, that the inquiry is not whether a court by *mandamus*, or proceeding in equity, could compel the execution of a new deed, so as to conform to the actual facts, but whether the treasurer can, upon his own motion, at the request of the grantee, or otherwise, make a second deed. As to the power of the court, however, in such cases, see *Gwynne* v. *Neis-wanger*, 20 Ohio, 556, and also what is quoted above from *Harper* v. *Sexton*, and the authorities there cited. But as to the power of the treasurer, my opinion is, that he cannot, without an order of court, make a second deed. The law requires him to make a deed immediately after the expiration of three years, from the date of the sale, for each lot, and deliver it to the purchaser. His power to thus convey is derived from the statute, and from this alone. Without it, his deed would be the merest nullity.

Nowhere, even by the remotest implication, is the

power given to make more than one deed. If he can make two, then a hundred, and there is no end to the confusion which he and the tax purchaser (or he alone) might create as to titles, by his efforts to make good his mistakes, and effectually pass the estate of another. The want of *statutory power*, in view of the strict rule obtaining, and by all courts recognized in this class of cases, and in relation to these sales, ought to be sufficient to settle the question. And this, again, because he is a mere ministerial officer, having no judicial functions, and his power of *amendment* was never recognized or admitted even at common law. For this, too, there is the greater reason, whether we measure his powers by the statute or common law, when we refer to the conclusiveness, under any construction, given to these deeds by the law itself. All matters of *power* being satisfactorily adjusted, as explained and discussed in the preceding part of this opinion, the deed, in my view, becomes conclusive. And this *conclusive* instrument we are called upon to hold the treasurer may execute months after the expiration of the time for redemption, and though he may have made a dozen or more prior deeds to the same land upon the same sale. This, too, without notice to the owner and without opportunity to be heard or to contest his action, until he is literally bound hand and foot by a *conclusive deed*. For these subsequent deeds, if valid, are as conclusive as the first. I know of *no* distinction, nor good reason for any. It seems to me, further, that the rule is a dangerous one, and not warranted either by principle or the law. The tax purchaser claims under an unequal bargain, and his is, therefore, a claim of strict right. He claims by the law, and by that law let his pretensions be judged. *Reed* v. *Morton*, 9 Mo. 878 ; and see *Moore* v. *Brown*, 4 McLean, 211 ; *Farnum* v. *Buffum*, 4 Cush. 260 ; *People* v. *Mayor*, 10 Wend. 395. Then,

McCready v. Sexton & Son.

again, the statute is largely penal in its nature and nothing should, therefore, be taken by implication or intendment. Not only so, but it would open a door for fraud, dangerous to the utmost degree. If it be said that this, when shown, would defeat the title, the answer is, the amendment is made in the absence of the owner and without his knowledge, not under the eye, and by the order of the court, and the very difficulty, not to say impossibility of establishing the fraud, is of itself a sufficient answer to the suggestion. Then, too, the making of a deed is to some extent the exercise of an act of ownership over the *estate of another*. This should never be permitted unless the consent of such owner has been obtained, if not expressly, then by implication.

If given expressly, or by written authority, well and good ; if by positive law, to which he is presumed to assent, then the power is to be exercised under the terms and restrictions imposed therein as to the mode of executing it. I do not admit the applicability of the doctrine, that what one may be compelled to do by judicial proceeding he may do voluntarily.

In principle this cannot be so, as to a case of this kind, where the officer has no judicial powers ; where he is not vested with discretion ; where he is a creature of the statute ; and where he volunteers to act in relation to the title and estate of another. The trouble with the argument is, that the treasurer has no power to do this thing at his own will, and when the court makes the order he finds in that the authority. An individual acting for himself, and concerning his own affairs or property, needs no such authority ; and hence, if he does voluntarily what he might be compelled to do, it is all right.

To illustrate further : One under age might, in a court of equity, perhaps be compelled to execute or surrender the fruits of a contract, while his attempted ratification

McCready v. Sexton & Son.

of it would be utterly valueless.   So one occupying a trust relation shall not purchase property sold by him under the power creating the trust, and the court will not stop to inquire, when asked to set it aside, whether there was prejudice or not.   And yet, by proceedings in court, to which all interested were parties, the chancellor might, properly guarding the rights of the beneficiary, provide for such a sale and purchase.   Other illustrations might be given, but these convey the distinction which, I think, obtains. More than this, I cannot do at this time.   For these reasons I do not believe the treasurer has the power, upon his own motion, to make a second deed.   If there has been a mistake ; if the first deed is informal ; if it fails to contain the essential recitals ; if, for any reason, the party is entitled to a corrected one or new deed, let him go to the courts ; let the parties there be heard, and not permit a mere ministerial officer, at his own volition, without statutory warrant therefor, to interfere and tamper with the estate of another, until a good title is tinkered up in one who takes under the law and should be judged by its terms.   I admit the question is not free from difficulty, nor by any means clear upon authority.   The adjudged cases in other states are, perhaps against me. They are not under a statute like ours however.   I believe I am correct upon principle, and there I stand.

As defendants rely upon this second deed, and as I deny the power of the treasurer to make the same, it follows, in my opinion, that they have no title, and as a consequence, they are in no position to resist plaintiff's recovery, who aside from this deed, has the undisputed title and right to possession.   I would not, therefore, disturb the judgment below.

A majority of the court conclude otherwise, however, and the order of reversal must be entered.